**SO ORDERED.**

**SIGNED this 14 day of February, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| CAREMERICA, INC. | 06-02913-8-JRL |
| DEBTOR. | |

_____

### ORDER

The matter before the court is the ombudsman's second report of patient care which was filed pursuant to 11 U.S.C. § 333(b). On February 13, 2007, the court conducted a hearing on this matter in Raleigh, North Carolina.

Pursuant to 11 U.S.C. § 333(b), the ombudsman monitors the quality of patient care and reports to the court regarding the quality of patient care in 60-day intervals. The section specifically provides that, "if such ombudsman determines that the quality of patient care provided to the patients of the debtor is declining significantly or is otherwise being materially compromised, [the ombudsman shall] file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination." 11 U.S.C. § 333(b). On February 5, 2007, the ombudsman filed a second report of patient care, which cited several problems at the Caremerica, Inc. facility.

One of the problems reported by the ombudsman was the lack of heat at the facility from 10:00 p.m. on Saturday, January 20, 2007, through 11:00 a.m. on Sunday, January 21, 2007. Ronald E. Burrell, the debtor's president, testified that the lack of heat was caused by the improper length of the fuel tank hose that prevented the fuel in the newly-installed tank from being utilized. However, Mr. Burrell assured the court that this problem has been corrected.

The ombudsman's report also noted concerns regarding the electric services and trash removal. On January 19, 2007, a representative from Jones Electric Membership Corporation was at the facility with orders to disconnect the electricity due to nonpayment. However, last minute negotiations for payment prevented the service interruption. Additionally, trash was not being removed from the facility on a regular basis due to nonpayment issues, and bags of trash were being stored in the facility's locked laundry room. Mr. Burrell testified that this issue has been corrected, and the trash is once again regularly being removed from the facility.

The ombudsman also reported concerns pertaining to the patients' food. There were complaints that peanut butter and cheese were frequently being substituted for meat entrees at the facility. These substitutions create a problem for a few of the residents who cannot eat cheese or peanut butter. There have also been reported shortages of perishable foods and general supplies that continue to be purchased by the staff from a petty cash fund rather than through a vendor contract. In his testimony, Mr. Burrell explained that due to the small size of this facility (only 15 residents) it is more cost-effective to purchase the perishable foods from the local grocery store every two to three days instead of buying the food in bulk from a food vendor.

Based on the record, it is hereby ordered that:

1. Caremerica, Inc. will submit proof of payment of essential facility utilities

        including electric service, telephone service, and trash service to the Bankruptcy Court Administrator on a monthly basis in the form of cancelled checks (or receipts) to ensure that residents' safety, welfare, and rights to care and services are protected.

2. Beginning Friday, February 16, 2007, Caremerica, Inc. will maintain no less than 450 gallons of fuel in its 1,000 gallon fuel tank in order to ensure adequate heat is provided during the remainder of the winter season without interruption.

3. Caremerica, Inc. will maintain a daily fuel log that sets forth the number of inches remaining in the fuel tank. Caremerica, Inc. will provide this log to the Bankruptcy Court Administrator on a weekly basis.

4. Caremerica, Inc. will submit copies of receipts for perishable foods purchased for the facility to the Bankruptcy Court Administrator on a monthly basis in order to ensure that residents' safety, welfare, and rights to care and services are protected.

If Caremerica, Inc. fails to comply with any of the above requirements from the date of this order until the date of confirmation, the court without another hearing and upon probative evidence may summarily displace the current management of Caremerica, Inc. and appoint a chapter 11 operating trustee.

END OF DOCUMENT